STATE OF NORTH CAROLINA

COUNTY OF BURKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 19 CVS 1276

FILED

2019 SEP 18  A 11: 36

BURKE CO., C.S.C.

BY ___ CM

DARRELL JEFFREY FORTUNE,

   Plaintiff,

vs.

GAYLOR ELECTRIC, INC.,
JUSTIN BAKER, individually,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

COMPLAINT FOR DAMAGES, AND
DECLARATORY AND INJUNCTIVE
RELIEF

Plaintiff, Darrell Jeffrey Fortune, complains and alleges as follows:

## THE PARTIES

  1. Plaintiff, Darrell Jeffrey Fortune (herein "Plaintiff" or "Fortune"), is, and at all times material herein was, a resident of Burke County, and a citizen of North Carolina.

  2. Defendant Gaylor Electric, Inc., (herein "Defendant Gaylor Electric" or "Gaylor Electric") is, and at all times material herein was, a corporation incorporated in Indiana, and authorized to do business in North Carolina, and engaged in electrical contracting with an office located in Mooresville, North Carolina, and within Iredell County.

  3. Defendant Justin Baker (herein "Defendant Baker" or "Baker") is, on information and belief, a resident of Iredell County, and a citizen of North Carolina.   At all times material herein, Defendant Baker occupied the position of Executive Vice-President, Southeast Region, at Defendant Gaylor Electric's office located in Mooresville, North Carolina, and within Iredell County.

## JURISDICTION

  4. This is a civil action of which this Court has subject-matter jurisdiction under the Fair Labor Standards Act, 29 U.S.C. § 216(b); the Family and Medical Leave Act, 29 U.S.C. §2617(a)(2); the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-243(a); and N.C. Gen. Stat. § 7A-243 in that the amount in controversy exceeds $25,000.

  5. At all times material herein, Defendant Gaylor Electric was an "[e]nterprise engaged in commerce" for purposes of the Fair Labor Standards Act in that it had employees engaged in interstate commerce, or had employees handling, selling, or otherwise working on

1

goods or materials that had been moved in or produced for interstate commerce by any person, and had an annual gross volume of sales in excess of $500,000. 29 U.S.C. § 203(r) and §203(s)(1).

6.      At all times material herein, Defendant Gaylor Electric engaged in interstate commerce, and employed more than fifty (50) employees for each working day during each of 20 or more calendar workweeks within the current or preceding calendar year. Defendant Gaylor Electric is, therefore, an "employer" within the meaning of the FMLA, 29 U.S.C. §2611(4).

7.      The Retaliatory Employment Discrimination Act (herein "REDA") provides that following issuance of a right-to-sue letter by the North Carolina Commissioner of Labor, an employee may commence an action in the Superior Court of the county where the violation occurred, where the complainant resides, or where the defendant resides or has its principal place of business. N.C. Gen. Stat. § 95-243(a)

8.      Plaintiff has satisfied all mandatory administrative prerequisites to filing his claim under REDA, to wit:

(a)      employment discrimination complaints were filed against Defendants with the Employment Discrimination Bureau of the North Carolina Department of Labor on or about February 21, 2018; and

(b)      notifications of the right-to-sue from the North Carolina Department of Labor were issued to Plaintiff on or about August 1, 2019, and this Complaint is being filed within ninety (90) days of the receipt of the same. True and correct copies of the North Carolina Department of Labor's notifications of right-to-sue are attached hereto as **Exhibit A**.

## VENUE

9.      Venue is proper in the Superior Court for Burke County, North Carolina under N.C. Gen. Stat. § 1-80; 1-82; and § 95-243(a).

## FACTS SUPPORTING EACH CLAIM

10.      Plaintiff began working for Defendant Gaylor Electric, at its Mooresville, North Carolina offices, located at 177 Knob Hill Road, Mooresville, North Carolina, on or about March 28, 2016.

11.      Plaintiff was involuntarily terminated from employment with Defendant Gaylor Electric on or about October 4, 2017.

12.      Plaintiff was employed by Defendant Gaylor Electric for at least twelve (12)-months, and for at least 1,250 hours during the twelve (12)-month period immediately preceding the date he commenced leave, as described herein.

2

13.     At all times during his employment, Plaintiff was employed as a project engineer, and was required to report to work at Defendant Gaylor Electric's offices located in Mooresville, North Carolina.

14.     Plaintiff worked at a worksite where Defendant Gaylor Electric employed at least 50 employees within a 75-mile radius.

15.     Plaintiff received an initial starting annual salary of approximately $50,000. After approximately six (6) months of employment, he received a $10,000 increase in his annual salary. At his one-year anniversary date, Fortune received a salary increase of $2,000, so that his annual salary was $62,000 at his termination.

16.     At all times during his employment, Defendant Gaylor considered Plaintiff as "exempt" under the provisions relating to the payment of overtime under the Fair Labor Standards Act,

17.     At all times material herein, Defendant Baker was the Executive Vice-President, Southeast Region, of Defendant Gaylor Electric.

18.     As the Executive Vice-President, Southeast Region, of Defendant Gaylor Electric, Defendant Baker had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

19.     At all times material herein, Defendant Gaylor Electric maintained a "Paid Time Off" (herein "PTO") policy under which Plaintiff was allowed seven (7) days of PTO in 2017.

20.     As of Monday, September 25, 2017, Plaintiff had exhausted all PTO available to him for that year.

21.     On September 25, 2017, Plaintiff developed a severe toothache as a result of a crown breaking below his gum line.

22.     On that date, Plaintiff left work at approximately 10:45 a.m., with permission, for a dental appointment.

23.     On that date, Plaintiff was examined by Todd Kincer, DDS, who determined that Plaintiff's lower wisdom teeth were impacted, and needed to be removed as soon as possible.

24.     Plaintiff made an appointment with an oral surgeon, Bryan R. Neuwirth, DDS, MD, for Tuesday, September 26, 2017.

25.     On September 26, 2017, Plaintiff worked until approximately 1:30 p.m., at which point he left work, with permission, for the appointment with Dr. Neuwirth.

26. During the appointment on September 26, 2017, Dr. Neuwirth, scheduled oral surgery for Plaintiff for Wednesday, September 27, 2017.

27. Plaintiff advised Defendant Gaylor Electric's management about the upcoming surgery on September 27, 2017, and his need to take time off from work.

28. On September 27, 2017, Plaintiff had oral surgery, during which his impacted wisdom teeth were removed.

29. On September 27, 2017, Dr. Neuwirth issued Plaintiff a memorandum to the attention of Defendant Gaylor Electric and Fortune's immediate supervisor, Russ Hullinger, stating that Fortune had oral surgery on September 27, 2017, and should be excused from work on September 27 and 28, 2017.

30. Plaintiff provided the memorandum from Dr. Neuwirth dated September 27, 2017, to Defendant Gaylor Electric upon his return to work.

31. Plaintiff took the day off from work, with permission, on September 27, 2017, for the oral surgery.

32. On Thursday, September 28, 2017, Plaintiff was experiencing significant pain from the oral surgery, but nevertheless reported to work briefly for a monthly meeting with his managers in order to review his projects.

33. At the conclusion of the meeting, and after completing some paperwork, Plaintiff was allowed to return home for the remainder of the day, with the permission of Defendant Baker.

34. On Friday, September 29, 2017, Plaintiff continued to experience significant pain from the wisdom teeth extraction, and was unable to report to work, or perform other regular daily activities, including but not limited to driving without impairment.

35. On that date, Plaintiff sent a text message to his immediate supervisor, Russ Hullinger, stating that he was unable to report to work, and requesting permission to work away from the office.

36. Ross Hullinger called Plaintiff in response to the text message, and advised Fortune that he could work away from the office on that date.

37. Plaintiff worked away from the Defendant Gaylor Electric's offices from approximately 7:00 a.m. until approximately 2:40 p.m. on September 29, 2017.

38. Plaintiff was off from work over the weekend of Saturday through Sunday, September 30 – October 1, 2017.

39.     Plaintiff continued to experience significant pain from the wisdom teeth extraction, and was unable to perform any work, or regular daily activities, including but not limited to driving without impairment, over the weekend of September 30 – October 1, 2017.

40.     On Monday, October 2, 2017, Plaintiff vomited in his car during his commute to work.

41.     On October 2, 2017, Plaintiff called Defendant Gaylor Electric's attendance line, and left a message that he would be unable to report to work that day because of the continuing pain from the tooth extraction.

42.     On October 2, 2017, Plaintiff was unable to perform any work or regular daily activities.

43.     On Tuesday, October 3, 2017, Plaintiff appeared for work at his regular time, and worked the entire day.

44.     On the morning of October 3, 2017, Plaintiff received an e-mail from Kathy Paris, a corporate administrative assistant, stating that PTO leave had been approved for September 27 – 29, 2017, even though Fortune had previously exhausted his allotted PTO leave, and had no PTO leave available to him for those dates.

45.     After receiving the aforementioned e-mail, Plaintiff called Kylie Burrell, a human-resources representative at Defendant Gaylor Electric's headquarters, located in Indianapolis, Indiana.  During the conversation, Burrell informed Fortune that a PTO form had been submitted for him, even though he was unaware of that fact.

46.     Later that same day, Plaintiff called Jean Benfield, an administrative assistant to Defendant Baker, who informed Fortune that Baker had directed her to submit a PTO form for him.

47.     On October 3, 2017, Plaintiff was directed to attend a meeting with Defendant Baker, Ross Hullinger, and Ron Clayton, who was the firm's general superintendent.

48.     During the meeting, Plaintiff was told that a PTO form had been completed for Fortune for the dates of Wednesday through Friday, September 27 – 29, 2017, because he did not work an entire workday on those dates.  Defendant Baker further stated that Fortune would only be paid for twenty (20) hours of work that week.

49.     During the meeting, Plaintiff disputed the proposed compensation for twenty (20) hours, and told Defendant Baker, Ross Hullinger, and Ron Cayton that he was entitled to be paid for thirty-two (32) hours because he had worked all or part of the workday on each day during the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

5

50.     Plaintiff and the managers at the meeting were unable to reach agreement on the proper compensation of Fortune for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

51.     On Wednesday, October 4, 2017, at approximately 9:20 a.m., Plaintiff sent an e-mail to Kathy Paris and Kylie Burrell, stating that he was entitled to be paid his full salary for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017, without any deductions.  Fortune did not receive any response to the first e-mail, so he sent a second e-mail, at approximately 11:30 a.m. that same day, asserting the same claim, and clarifying the dates for which he should have been paid.

52.     Shortly after Plaintiff sent the second e-mail on October 4, 2017, Defendant Baker entered Fortune's office, along with Westin Short, who was vice-president of engineering, and told Fortune that the company was going to pay him for forty (40) hours of work for the previous week, but that he was terminated immediately.

53.     Plaintiff asked Defendant Baker and Short for the reason for his termination, but never received an answer, and left the office after retrieving his personal property.

54.     On information and belief, Defendants Gaylor Electric and Baker jointly made the decision to terminate Plaintiff.

55.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, the loss of wages and benefits that he earned, and expected to earn, from his employment at Defendant Gaylor Electric.

56.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, including but not limited to humiliation, anxiety, grief, and sleeplessness.

57.     Defendants' termination of Plaintiff was willful, and malicious, and with knowledge that his termination was in violation of applicable federal and state law.

## FIRST CLAIM
## FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Against All Defendants)

As a first, separate, distinct and independent claim, Plaintiff complains of Defendants, as follows:

58.     Plaintiff hereby incorporates, by reference, as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive of this Complaint.

59.     At all times material herein, Plaintiff was an "employee" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

6

60.    At all times material herein, Plaintiff was a salaried employee whose compensation and job duties as a project engineer qualified him as "exempt" from the overtime provisions of the Fair Labor Standard Act, 29 U.S.C. § 213(a)(1).

61.    At all times material herein, Defendant Gaylor Electric was an "employer" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(d).

62.    At all times material herein, Defendant Gaylor Electric was an "[e]nterprise engaged in commerce" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(b), (r)(1), and (s)(1).

63.    At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

64.    Plaintiff was entitled to payment for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

65.    Plaintiff rejected Defendants' proposed compensation for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

66.    Defendants' proposal to compensate Plaintiff for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017, constituted an illegal partial-day deduction from his salary under the Fair Labor Standards Act.

67.    Plaintiff objected, orally and electronically, and in good faith, to the proposed deduction from his salary .

68.    Plaintiff demanded, orally and electronically, and in good faith, payment of his salary for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

69.    Defendants terminated Plaintiff in retaliation for his objections to the Defendants' proposed compensation for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

70.    Defendants terminated Plaintiff in retaliation for his demands to be paid for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

71.    Defendants' termination of Plaintiff was unlawful, and in retaliation for protected activity under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

WHEREFORE, Plaintiff seeks the following relief:

(a)    an order enjoining Defendants from further violations of the Fair Labor Standards Act;

(b)    an order directing that Plaintiff be reinstated to his previous or an equivalent position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)    an order awarding Plaintiff back pay (including fringe benefits) from the date of the illegal acts through the date of trial, or alternatively, making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(d)    an order awarding Plaintiff compensatory damages for his humiliation, embarrassment, anger, anxiety, and grief;

(e)    an order awarding Plaintiff liquidated damages;

(f)    an order awarding Plaintiff punitive damages;

(g)    a jury trial on this claim;

(h)    an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(i)    an order awarding Plaintiff all attorney's fees, expert witness fees and costs of this action; and

(j)    an order awarding Plaintiff such other and further relief as this Court deems appropriate.

## SECOND CLAIM
## FOR INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE
## FAMILY AND MEDICAL LEAVE ACT
### (Against All Defendants)

As a second, separate and distinct claim, Plaintiff complains of Defendants as follows:

72.    Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive, of this Complaint.

73.    Plaintiff worked for Defendant Gaylor Electric at least 1,250 hours within the twelve (12) months prior to the date that he qualified for leave under the FMLA; worked at a

worksite at which Gaylor Electric employed at least 50 employees within a 75 mile radius; and was, therefore, an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2).

74. At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

75. Plaintiff suffered from a "serious health condition" as defined in the FMLA, 29 U.S.C. § 2611(11), and the applicable regulations.

76. Plaintiff was entitled to leave pursuant to the FMLA, at least beginning on or about September 27, 2017. 29 U.S.C. § 2612(a)(1)(D).

77. Defendants interfered with, restrained, and/or denied Plaintiff's rights under the FMLA by, inter alia, failing to provide Plaintiff with adequate notice of his rights and responsibilities under the FMLA following Fortune's notice of his need to take time off because of his serious health condition; failing to provide Fortune with the leave to which he was entitled under the FMLA; failing to reinstate Fortune to his previous or an equivalent position; terminating Fortune's employment when he sought to take leave under the FMLA; and terminating Fortune in retaliation for his use of FMLA leave. 29 U.S.C. § 2615(a)(1).

78. As a direct and proximate result of the wrongful acts of Defendants, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendants' misconduct.

WHEREFORE, Plaintiff seeks the following relief:

(a)     an order enjoining Defendants from engaging in further acts of interference with Plaintiff and other employees in the exercise of their rights under the FMLA;

(b)     an order directing that Plaintiff be reinstated to his previous position as project engineer at Defendant Gaylor Electric's Mooresville, North Carolina facility, or a comparable position thereto, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the wrongful acts alleged through the date of trial;

(d)     a jury trial on this claim;

(e)     an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

9

(f)    an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(g)    an order awarding Plaintiff such other and further relief as this Court deems fit.

**THIRD CLAIM**
**FOR DISCRIMINATION/RETALIATION AGAINST PLAINTIFF UNDER THE**
**FAMILY AND MEDICAL LEAVE ACT**
**(Against All Defendants)**

As a third, separate and distinct claim, Plaintiff complains of Defendants as follows:

79.    Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraph 1 through 57, inclusive of this Complaint.

80.    Plaintiff worked for Defendant Gaylor Electric at least 1,250 hours within the twelve (12) months prior to the date that he qualified for leave under the FMLA; worked at a worksite at which Gaylor Electric employed at least 50 employees within a 75 mile radius; and was, therefore, an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2).

81.    At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

82.    Plaintiff suffered from a "serious health condition" as defined in the FMLA, 29 U.S.C. § 2611(11), and the applicable regulations.

83.    Plaintiff was entitled to leave pursuant to the FMLA, at least beginning on or about September 27, 2017. 29 U.S.C. § 2612(a)(1)(D).

84.    Defendants discriminated and/or retaliated against Plaintiff by, inter alia, denying Plaintiff family and medical leave to which he was entitled under the FMLA; failing to reinstate Plaintiff to his previous or an equivalent position; terminating Plaintiff's employment when he sought to take leave under the FMLA to care for his own serious health condition; terminating Fortune in retaliation for his use of FMLA leave; and terminating Fortune for his opposition to Defendants' unlawful employment practices under the FMLA. 29 U.S.C. § 2615 (a)(2).

85.    As a direct and proximate result of the wrongful acts of Defendants, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendants' misconduct.

WHEREFORE, Plaintiff seeks the following relief:

(a)     an order enjoining Defendants from engaging in further acts of discrimination against Plaintiff and other employees as a result of the exercise of their rights under the FMLA;

(b)     an order directing that Plaintiff be reinstated to his previous position as project manager at Defendant Gaylor Electric's Mooresville, North Carolina facility, or a comparable position thereto, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the discriminatory acts alleged through the date of trial;

(d)     a jury trial on this claim;

(e)     an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

(f)     an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(g)     an order awarding Plaintiff such other and further relief as this Court deems fit.

## FOURTH CLAIM
## FOR WILLFUL VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT
### (Against All Defendants)

As a fourth, separate and distinct claim, Plaintiff complains of Defendants as follows:

86.     Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraph 1 through 57, inclusive of this Complaint.

87.     The acts described herein were engaged in with Defendants knowing or showing reckless disregard for whether their conduct violated the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

WHEREFORE, Plaintiff seeks the following relief:

(a)     an order enjoining Defendants from engaging in further acts of willful violation of the FMLA;

(b)     an order making Plaintiff whole by awarding liquidated damages pursuant to the FMLA in an amount deemed appropriate by the Court;

(c)     a jury trial on this claim;

11

(d)      an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

(e)      an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(f)      an order awarding Plaintiff such other and further relief as this Court deems fit.

## FIFTH CLAIM
## FOR VIOLATION OF THE RETALIATORY EMPLOYMENT DISCRIMINATION ACT
### (Against All Defendants)

As a fifth, separate, distinct and independent claim, Plaintiff complains of Defendants, as follows:

88.     Plaintiff hereby incorporates, by reference, as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive of this Complaint.

89.     At all times material herein, Defendant Gaylor Electric was a "person" as defined in REDA, N.C. Gen. Stat. § 95-240(1);

90.     At all times material herein, Defendant Baker was a "person" as defined in REDA, N.C. Gen. Stat. § 95-240(1);

91.     Defendants' proposed deductions from his salary were illegal under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6, § 95-25.7, § 95-25.8, and § 95-25.13.

92.     Plaintiff's actions in inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed, unauthorized and illegal deductions from his compensation, constituted protected activity under REDA, N.C. Gen. Stat. § 95-241(a)(1b).

93.     Defendants terminated Plaintiff because of his protected activity in inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed, unauthorized and illegal deductions from his compensation.

94.     Defendants' termination of Plaintiff was unlawful, and in retaliation for his protected activity under REDA, N.C. Gen. Stat. § 95-241(a)(1b).

95.     Defendants' termination of Plaintiff constituted a willful violation of REDA, N.C. Gen. Stat. § 95-243(c).

WHEREFORE, Plaintiff seeks the following relief:

(a)      a declaration that the practices and acts complained of herein are a violation of REDA;

12

(b)     an order enjoining Defendants from engaging in violations of REDA, by terminating his employment for motives that violate the statute;

(c)     an order directing that Plaintiff be reinstated to his previous position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(d)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the discriminatory acts through the date of trial;

(e)     an order awarding Plaintiff front pay (including fringe benefits) from the date of the trial forward;

(f)     an order awarding Plaintiff treble the amount of his lost wages and benefits, and other economic damages proximately caused by Defendant's unlawful conduct;

(g)     an order awarding Plaintiff compensatory damages;

(h)     a jury trial on this claim;

(i)     an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(j)     an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(k)     for such other relief as may be just, proper, and necessary to afford complete relief to Plaintiff.

### SIXTH CLAIM
### FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
#### (Against Defendant Gaylor Electric)

As a sixth, separate, distinct, and independent claim, Plaintiff complains of Defendant Gaylor Electric as follows:

96.     Plaintiff incorporates by reference, as though fully set forth, each and every allegation contained in paragraphs 1 – 57 inclusive, of this Complaint.

97.     North Carolina law recognizes the public-policy exception to the employment at-will doctrine.

98.     North Carolina law prohibits the termination of employment for unlawful reasons or purposes that contravene public policy.

13

99.     North Carolina law provides that public policy is violated when an employee is fired in contravention of express policy declarations. Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.

100.    Defendant Gaylor Electric's termination of Plaintiff's employment occurred for reasons that violate public policy.

101.    Defendant Gaylor Electric's termination of Plaintiff's employment for inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed unauthorized and illegal deductions from his compensation, which would have violated the North Carolina Wage and Hour Act, contravenes the public policies set forth in the North Carolina Wage and Hour Act in that it is the public policy of the State of North Carolina to promote the general welfare of the people by enacting and enforcing laws concerned with wage levels of employees, hours of labor, and payment of earned wages.

102.    Defendant Gaylor Electric's termination of Plaintiff's employment for inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed unauthorized and illegal deductions from his compensation, which would have violated the North Carolina Wage and Hour Act, also contravenes the public policies set forth in the Retaliatory Employment Discrimination Act in that it is the public policy of the State of North Carolina to promote the general welfare of the people by enacting and enforcing laws prohibiting discrimination against employees for exercising their rights under that statute.

103.    As a direct and proximate result of the wrongful acts of Defendant Gaylor Electric, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendant's illegal conduct.

104.    As a direct and proximate result of the wrongful acts of Defendant Gaylor Electric, Plaintiff sustained humiliation, anger, anxiety and grief, and is entitled to damages for Defendant's misconduct.

105.    Because the conduct of Defendant Gaylor Electric constitutes gross, wanton, malicious, reckless, and/or intentional violation of his rights under the public policy of North Carolina, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff seeks the following relief:

(a)     an order enjoining Defendant Gaylor Electric from engaging in further violations of North Carolina public policy as set forth in the North Carolina Wage and Hour Act and the Retaliatory Employment Discrimination Act;

(b)     an order directing that Plaintiff be reinstated to his previous or an equivalent position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

14

(c)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the illegal acts through the date of trial;

(d)     an order awarding Plaintiff front pay (including fringe benefits) from the date of the trial forward;

(e)     an order awarding Plaintiff compensatory damages for his humiliation, embarrassment, anger, anxiety, and grief;

(f)     an order awarding Plaintiff punitive damages;

(g)     a jury trial on this claim;

(h)     an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(i)     an order awarding Plaintiff all attorney's fees, expert witness fees and costs of this action; and

(j)     an order awarding Plaintiff such other and further relief as this Court deems appropriate.

**PLAINTIFF REQUESTS A JURY TRIAL OF ALL ISSSUES TRIABLE HEREIN BY A JURY.**

This 18th day of September 2019.

LAW OFFICES OF GLEN C. SHULTS

By: _Glen C. Shults_
    GLEN C. SHULTS

Attorneys for Plaintiff
DARRELL JEFFREY FORTUNE

959 Merrimon Avenue, Suite 204 (28804)
Post Office Box 18687
Asheville, North Carolina 28814
Telephone: (828) 251-9676
Facsimile: (828) 251-0648
E-Mail: shultslaw@bellsouth.net
North Carolina State Bar No. 25641

15

# Exhibit - A



**CHERIE K. BERRY**
Commissioner of Labor

Harriet S. Hopkins
Administrator
Retaliatory Employment Discrimination Bureau

August 1, 2019

**BY CERTIFIED MAIL**
70171450000147818671

Darrell Fortune c/o Glen Shults
PO Box 18687
Asheville, NC 28814

> **Re: Darrell Fortune v. Gaylor Electric, Inc**
> **File No: 46478**

Dear Darrell Fortune:

The Bureau has received your request that the Bureau issue you a right-to-sue letter regarding the above-referenced Complaint. You request meets the requirements set forth in the Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §95-242(c).

**THIS IS YOUR 90-DAY RIGHT-TO-SUE LETTER. Pursuant to N.C. Gen. Stat. §95-243, if you intend to pursue a lawsuit against the Respondent, you must file a civil action in superior court within ninety (90) days of the date of this letter. If you fail to file a civil action within this time, your right to sue the Respondent under the provisions of REDA is lost.**

If you want to seek legal advice regarding the requirements for filing a civil action, you may want to consult with an attorney or the NC Lawyer Referral Service at the NC Bar Association at 1-800-662-7660 may be able to refer you to an attorney.

With the issuance of this 90-Day Right-to-Sue letter, your Complaint file is now closed and the Bureau will take no further action on your case. If you have questions, you may contact our Information Officer, Jay Cronley, as set out below. A copy of this letter has been sent to Respondent.

Sincerely,

Jay Cronley
Information Officer

cc:   Respondent
*Complainant RTS Letter--Requested*

1101 Mail Service Center • Raleigh • NC • 27699-1101
Office: 919-707-7941 • Fax: 888-533-0886 • jay.cronley@labor.nc.gov

Case 1:19-cv-00346-MR-WCM   Document 1-2   Filed 12/13/19   Page 17 of 37



CHERIE K. BERRY
Commissioner of Labor

Harriet S. Hopkins
Administrator
Retaliatory Employment Discrimination Bureau

August 1, 2019

**BY CERTIFIED MAIL**
70171450000147818671

Darrell Fortune
116 Ford Rd.
Morganton, NC 28655

   **Re: Darrell Fortune v. Justin Baker**
   **File No: 46480**

Dear Darrell Fortune:

The Bureau has received your request that the Bureau issue you a right-to-sue letter regarding the above-referenced Complaint. You request meets the requirements set forth in the Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §95-242(c).

THIS IS YOUR 90-DAY RIGHT-TO-SUE LETTER. **Pursuant to N.C. Gen. Stat. §95-243, if you intend to pursue a lawsuit against the Respondent, you must file a civil action in superior court within ninety (90) days of the date of this letter. If you fail to file a civil action within this time, your right to sue the Respondent under the provisions of REDA is lost.**

If you want to seek legal advice regarding the requirements for filing a civil action, you may want to consult with an attorney or the NC Lawyer Referral Service at the NC Bar Association at 1-800-662-7660 may be able to refer you to an attorney.

With the issuance of this 90-Day Right-to-Sue letter, your Complaint file is now closed and the Bureau will take no further action on your case. If you have questions, you may contact our Information Officer, Jay Cronley, as set out below. A copy of this letter has been sent to Respondent.

Sincerely,

Jay Cronley
Information Officer

cc:   Respondent
*Complainant RTS Letter--Requested*

1101 Mail Service Center • Raleigh • NC • 27699-1101
Office: 919-707-7941 • Fax: 888-333-0886 • Jay.Cronley@labor.nc.gov
Case 1:19-cv-00346-MR-WCM   Document 1-2   Filed 12/13/19   Page 18 of 37

STATE OF NORTH CAROLINA

COUNTY OF BURKE

DARRELL JEFFREY FORTUNE,

            Plaintiff,

vs.

GAYLOR ELECTRIC, INC.,
JUSTIN BAKER, individually,

            Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 19-CVS-1276

PLAINTIFF'S CONSENT TO FILING
COMPLAINT FOR DAMAGES, AND
DECLARATORY AND INJUNCTIVE
RELIEF

      I am the plaintiff in the above-captioned case. I have reviewed the attached Complaint
For Damages, And Declaratory And Injunctive Relief, and consent to the filing of the same
under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

      This 21st day of September 2019.

DARRELL JEFFREY FORTUNE

STATE OF NORTH CAROLINA

COUNTY OF BURKE

FILED

2019 SEP 18 A 11: 36

BURKE CO., C.S.C.
BY CL

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 19 CVS 1276

DARRELL JEFFREY FORTUNE

  Plaintiff,

vs.

GAYLOR ELECTRIC, INC.,
JUSTIN BAKER, individually,

  Defendants.

)
)
)
)
) COMPLAINT FOR DAMAGES, AND
) DECLARATORY AND INJUNCTIVE
) RELIEF
)
)
)
)
)

Plaintiff, Darrell Jeffrey Fortune, complains and alleges as follows:

## THE PARTIES

1. Plaintiff, Darrell Jeffrey Fortune (herein "Plaintiff" or "Fortune"), is, and at all times material herein was, a resident of Burke County, and a citizen of North Carolina.

2. Defendant Gaylor Electric, Inc., (herein "Defendant Gaylor Electric" or "Gaylor Electric") is, and at all times material herein was, a corporation incorporated in Indiana, and authorized to do business in North Carolina, and engaged in electrical contracting with an office located in Mooresville, North Carolina, and within Iredell County.

3. Defendant Justin Baker (herein "Defendant Baker" or "Baker") is, on information and belief, a resident of Iredell County, and a citizen of North Carolina. At all times material herein, Defendant Baker occupied the position of Executive Vice-President, Southeast Region, at Defendant Gaylor Electric's office located in Mooresville, North Carolina, and within Iredell County.

## JURISDICTION

4. This is a civil action of which this Court has subject-matter jurisdiction under the Fair Labor Standards Act, 29 U.S.C. § 216(b); the Family and Medical Leave Act, 29 U.S.C. §2617(a)(2); the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-243(a); and N.C. Gen. Stat. § 7A-243 in that the amount in controversy exceeds $25,000.

5. At all times material herein, Defendant Gaylor Electric was an "[e]nterprise engaged in commerce" for purposes of the Fair Labor Standards Act in that it had employees engaged in interstate commerce, or had employees handling, selling, or otherwise working on

1

goods or materials that had been moved in or produced for interstate commerce by any person, and had an annual gross volume of sales in excess of $500,000. 29 U.S.C. § 203(r) and §203(s)(1).

6.      At all times material herein, Defendant Gaylor Electric engaged in interstate commerce, and employed more than fifty (50) employees for each working day during each of 20 or more calendar workweeks within the current or preceding calendar year. Defendant Gaylor Electric is, therefore, an "employer" within the meaning of the FMLA, 29 U.S.C. §2611(4).

7.      The Retaliatory Employment Discrimination Act (herein "REDA") provides that following issuance of a right-to-sue letter by the North Carolina Commissioner of Labor, an employee may commence an action in the Superior Court of the county where the violation occurred, where the complainant resides, or where the defendant resides or has its principal place of business. N.C. Gen. Stat. § 95-243(a)

8.      Plaintiff has satisfied all mandatory administrative prerequisites to filing his claim under REDA, to wit:

(a)      employment discrimination complaints were filed against Defendants with the Employment Discrimination Bureau of the North Carolina Department of Labor on or about February 21, 2018; and

(b)      notifications of the right-to-sue from the North Carolina Department of Labor were issued to Plaintiff on or about August 1, 2019, and this Complaint is being filed within ninety (90) days of the receipt of the same. True and correct copies of the North Carolina Department of Labor's notifications of right-to-sue are attached hereto as **Exhibit A**.

<u>VENUE</u>

9.      Venue is proper in the Superior Court for Burke County, North Carolina under N.C. Gen. Stat. § 1-80; 1-82; and § 95-243(a).

<u>FACTS SUPPORTING EACH CLAIM</u>

10.      Plaintiff began working for Defendant Gaylor Electric, at its Mooresville, North Carolina offices, located at 177 Knob Hill Road, Mooresville, North Carolina, on or about March 28, 2016.

11.      Plaintiff was involuntarily terminated from employment with Defendant Gaylor Electric on or about October 4, 2017.

12.      Plaintiff was employed by Defendant Gaylor Electric for at least twelve (12)-months, and for at least 1,250 hours during the twelve (12)-month period immediately preceding the date he commenced leave, as described herein.

2

13.     At all times during his employment, Plaintiff was employed as a project engineer, and was required to report to work at Defendant Gaylor Electric's offices located in Mooresville, North Carolina.

14.     Plaintiff worked at a worksite where Defendant Gaylor Electric employed at least 50 employees within a 75-mile radius.

15.     Plaintiff received an initial starting annual salary of approximately $50,000. After approximately six (6) months of employment, he received a $10,000 increase in his annual salary. At his one-year anniversary date, Fortune received a salary increase of $2,000, so that his annual salary was $62,000 at his termination.

16.     At all times during his employment, Defendant Gaylor considered Plaintiff as "exempt" under the provisions relating to the payment of overtime under the Fair Labor Standards Act,

17.     At all times material herein, Defendant Baker was the Executive Vice-President, Southeast Region, of Defendant Gaylor Electric.

18.     As the Executive Vice-President, Southeast Region, of Defendant Gaylor Electric, Defendant Baker had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

19.     At all times material herein, Defendant Gaylor Electric maintained a "Paid Time Off" (herein "PTO") policy under which Plaintiff was allowed seven (7) days of PTO in 2017.

20.     As of Monday, September 25, 2017, Plaintiff had exhausted all PTO available to him for that year.

21.     On September 25, 2017, Plaintiff developed a severe toothache as a result of a crown breaking below his gum line.

22.     On that date, Plaintiff left work at approximately 10:45 a.m., with permission, for a dental appointment.

23.     On that date, Plaintiff was examined by Todd Kincer, DDS, who determined that Plaintiff's lower wisdom teeth were impacted, and needed to be removed as soon as possible.

24.     Plaintiff made an appointment with an oral surgeon, Bryan R. Neuwirth, DDS, MD, for Tuesday, September 26, 2017.

25.     On September 26, 2017, Plaintiff worked until approximately 1:30 p.m., at which point he left work, with permission, for the appointment with Dr. Neuwirth.

3

26.     During the appointment on September 26, 2017, Dr. Neuwirth, scheduled oral surgery for Plaintiff for Wednesday, September 27, 2017.

27.     Plaintiff advised Defendant Gaylor Electric's management about the upcoming surgery on September 27, 2017, and his need to take time off from work.

28.     On September 27, 2017, Plaintiff had oral surgery, during which his impacted wisdom teeth were removed.

29.     On September 27, 2017, Dr. Neuwirth issued Plaintiff a memorandum to the attention of Defendant Gaylor Electric and Fortune's immediate supervisor, Russ Hullinger, stating that Fortune had oral surgery on September 27, 2017, and should be excused from work on September 27 and 28, 2017.

30.     Plaintiff provided the memorandum from Dr. Neuwirth dated September 27, 2017, to Defendant Gaylor Electric upon his return to work.

31.     Plaintiff took the day off from work, with permission, on September 27, 2017, for the oral surgery.

32.     On Thursday, September 28, 2017, Plaintiff was experiencing significant pain from the oral surgery, but nevertheless reported to work briefly for a monthly meeting with his managers in order to review his projects.

33.     At the conclusion of the meeting, and after completing some paperwork, Plaintiff was allowed to return home for the remainder of the day, with the permission of Defendant Baker.

34.     On Friday, September 29, 2017, Plaintiff continued to experience significant pain from the wisdom teeth extraction, and was unable to report to work, or perform other regular daily activities, including but not limited to driving without impairment.

35.     On that date, Plaintiff sent a text message to his immediate supervisor, Russ Hullinger, stating that he was unable to report to work, and requesting permission to work away from the office.

36.     Ross Hullinger called Plaintiff in response to the text message, and advised Fortune that he could work away from the office on that date.

37.     Plaintiff worked away from the Defendant Gaylor Electric's offices from approximately 7:00 a.m. until approximately 2:40 p.m. on September 29, 2017.

38.     Plaintiff was off from work over the weekend of Saturday through Sunday, September 30 – October 1, 2017.

4

39. Plaintiff continued to experience significant pain from the wisdom teeth extraction, and was unable to perform any work, or regular daily activities, including but not limited to driving without impairment, over the weekend of September 30 – October 1, 2017.

40. On Monday, October 2, 2017, Plaintiff vomited in his car during his commute to work.

41. On October 2, 2017, Plaintiff called Defendant Gaylor Electric's attendance line, and left a message that he would be unable to report to work that day because of the continuing pain from the tooth extraction.

42. On October 2, 2017, Plaintiff was unable to perform any work or regular daily activities.

43. On Tuesday, October 3, 2017, Plaintiff appeared for work at his regular time, and worked the entire day.

44. On the morning of October 3, 2017, Plaintiff received an e-mail from Kathy Paris, a corporate administrative assistant, stating that PTO leave had been approved for September 27 – 29, 2017, even though Fortune had previously exhausted his allotted PTO leave, and had no PTO leave available to him for those dates.

45. After receiving the aforementioned e-mail, Plaintiff called Kylie Burrell, a human-resources representative at Defendant Gaylor Electric's headquarters, located in Indianapolis, Indiana. During the conversation, Burrell informed Fortune that a PTO form had been submitted for him, even though he was unaware of that fact.

46. Later that same day, Plaintiff called Jean Benfield, an administrative assistant to Defendant Baker, who informed Fortune that Baker had directed her to submit a PTO form for him.

47. On October 3, 2017, Plaintiff was directed to attend a meeting with Defendant Baker, Ross Hullinger, and Ron Clayton, who was the firm's general superintendent.

48. During the meeting, Plaintiff was told that a PTO form had been completed for Fortune for the dates of Wednesday through Friday, September 27 – 29, 2017, because he did not work an entire workday on those dates. Defendant Baker further stated that Fortune would only be paid for twenty (20) hours of work that week.

49. During the meeting, Plaintiff disputed the proposed compensation for twenty (20) hours, and told Defendant Baker, Ross Hullinger, and Ron Cayton that he was entitled to be paid for thirty-two (32) hours because he had worked all or part of the workday on each day during the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

5

50.     Plaintiff and the managers at the meeting were unable to reach agreement on the proper compensation of Fortune for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

51.     On Wednesday, October 4, 2017, at approximately 9:20 a.m., Plaintiff sent an e-mail to Kathy Paris and Kylie Burrell, stating that he was entitled to be paid his full salary for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017, without any deductions.  Fortune did not receive any response to the first e-mail, so he sent a second e-mail, at approximately 11:30 a.m. that same day, asserting the same claim, and clarifying the dates for which he should have been paid.

52.     Shortly after Plaintiff sent the second e-mail on October 4, 2017, Defendant Baker entered Fortune's office, along with Westin Short, who was vice-president of engineering, and told Fortune that the company was going to pay him for forty (40) hours of work for the previous week, but that he was terminated immediately.

53.     Plaintiff asked Defendant Baker and Short for the reason for his termination, but never received an answer, and left the office after retrieving his personal property.

54.     On information and belief, Defendants Gaylor Electric and Baker jointly made the decision to terminate Plaintiff.

55.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, the loss of wages and benefits that he earned, and expected to earn, from his employment at Defendant Gaylor Electric.

56.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress, including but not limited to humiliation, anxiety, grief, and sleeplessness.

57.     Defendants' termination of Plaintiff was willful, and malicious, and with knowledge that his termination was in violation of applicable federal and state law.

## FIRST CLAIM
## FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Against All Defendants)

As a first, separate, distinct and independent claim, Plaintiff complains of Defendants, as follows:

58.     Plaintiff hereby incorporates, by reference, as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive of this Complaint.

59.     At all times material herein, Plaintiff was an "employee" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

6

60.     At all times material herein, Plaintiff was a salaried employee whose compensation and job duties as a project engineer qualified him as "exempt" from the overtime provisions of the Fair Labor Standard Act, 29 U.S.C. § 213(a)(1).

61.     At all times material herein, Defendant Gaylor Electric was an "employer" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(d).

62.     At all times material herein, Defendant Gaylor Electric was an "[e]nterprise engaged in commerce" as defined in the Fair Labor Standards Act, 29 U.S.C. § 203(b), (r)(1), and (s)(1).

63.     At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

64.     Plaintiff was entitled to payment for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

65.     Plaintiff rejected Defendants' proposed compensation for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

66.     Defendants' proposal to compensate Plaintiff for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017, constituted an illegal partial-day deduction from his salary under the Fair Labor Standards Act.

67.     Plaintiff objected, orally and electronically, and in good faith, to the proposed deduction from his salary .

68.     Plaintiff demanded, orally and electronically, and in good faith, payment of his salary for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

69.     Defendants terminated Plaintiff in retaliation for his objections to the Defendants' proposed compensation for twenty (20) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

70.     Defendants terminated Plaintiff in retaliation for his demands to be paid for thirty-two (32) hours of work for the period of Monday – Tuesday and Thursday – Friday, September 25 – 26 and 28 – 29, 2017.

71.     Defendants' termination of Plaintiff was unlawful, and in retaliation for protected activity under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

WHEREFORE, Plaintiff seeks the following relief:

(a)   an order enjoining Defendants from further violations of the Fair Labor Standards Act;

(b)   an order directing that Plaintiff be reinstated to his previous or an equivalent position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)   an order awarding Plaintiff back pay (including fringe benefits) from the date of the illegal acts through the date of trial, or alternatively, making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(d)   an order awarding Plaintiff compensatory damages for his humiliation, embarrassment, anger, anxiety, and grief;

(e)   an order awarding Plaintiff liquidated damages;

(f)   an order awarding Plaintiff punitive damages;

(g)   a jury trial on this claim;

(h)   an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(i)   an order awarding Plaintiff all attorney's fees, expert witness fees and costs of this action; and

(j)   an order awarding Plaintiff such other and further relief as this Court deems appropriate.

## SECOND CLAIM
## FOR INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE
## FAMILY AND MEDICAL LEAVE ACT
### (Against All Defendants)

As a second, separate and distinct claim, Plaintiff complains of Defendants as follows:

72.   Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive, of this Complaint.

73.   Plaintiff worked for Defendant Gaylor Electric at least 1,250 hours within the twelve (12) months prior to the date that he qualified for leave under the FMLA; worked at a

8

worksite at which Gaylor Electric employed at least 50 employees within a 75 mile radius; and was, therefore, an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2).

74.     At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

75.     Plaintiff suffered from a "serious health condition" as defined in the FMLA, 29 U.S.C. § 2611(11), and the applicable regulations.

76.     Plaintiff was entitled to leave pursuant to the FMLA, at least beginning on or about September 27, 2017.  29 U.S.C. § 2612(a)(1)(D).

77.     Defendants interfered with, restrained, and/or denied Plaintiff's rights under the FMLA by, inter alia, failing to provide Plaintiff with adequate notice of his rights and responsibilities under the FMLA following Fortune's notice of his need to take time off because of his serious health condition; failing to provide Fortune with the leave to which he was entitled under the FMLA; failing to reinstate Fortune to his previous or an equivalent position; terminating Fortune's employment when he sought to take leave under the FMLA; and terminating Fortune in retaliation for his use of FMLA leave.  29 U.S.C. § 2615(a)(1).

78.     As a direct and proximate result of the wrongful acts of Defendants, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendants' misconduct.

WHEREFORE, Plaintiff seeks the following relief:

(a)     an order enjoining Defendants from engaging in further acts of interference with Plaintiff and other employees in the exercise of their rights under the FMLA;

(b)     an order directing that Plaintiff be reinstated to his previous position as project engineer at Defendant Gaylor Electric's Mooresville, North Carolina facility, or a comparable position thereto, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the wrongful acts alleged through the date of trial;

(d)     a jury trial on this claim;

(e)     an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

(f)     an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(g)     an order awarding Plaintiff such other and further relief as this Court deems fit.

## THIRD CLAIM
### FOR DISCRIMINATION/RETALIATION AGAINST PLAINTIFF UNDER THE FAMILY AND MEDICAL LEAVE ACT
#### (Against All Defendants)

As a third, separate and distinct claim, Plaintiff complains of Defendants as follows:

79.     Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraph 1 through 57, inclusive of this Complaint.

80.     Plaintiff worked for Defendant Gaylor Electric at least 1,250 hours within the twelve (12) months prior to the date that he qualified for leave under the FMLA; worked at a worksite at which Gaylor Electric employed at least 50 employees within a 75 mile radius; and was, therefore, an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611(2).

81.     At all times material herein, Defendant Baker was a person acting directly or indirectly in the interest of Defendant Gaylor Electric, and had the authority to exercise the following control over Plaintiff: (a) hire and/or fire Plaintiff; (b) supervise and/or control Plaintiff's work schedule and conditions of employment; (c) determine Plaintiff's compensation and method of payment of compensation; and (d) maintain Plaintiff's employment records.

82.     Plaintiff suffered from a "serious health condition" as defined in the FMLA, 29 U.S.C. § 2611(11), and the applicable regulations.

83.     Plaintiff was entitled to leave pursuant to the FMLA, at least beginning on or about September 27, 2017. 29 U.S.C. § 2612(a)(1)(D).

84.     Defendants discriminated and/or retaliated against Plaintiff by, inter alia, denying Plaintiff family and medical leave to which he was entitled under the FMLA; failing to reinstate Plaintiff to his previous or an equivalent position; terminating Plaintiff's employment when he sought to take leave under the FMLA to care for his own serious health condition; terminating Fortune in retaliation for his use of FMLA leave; and terminating Fortune for his opposition to Defendants' unlawful employment practices under the FMLA. 29 U.S.C. § 2615 (a)(2).

85.     As a direct and proximate result of the wrongful acts of Defendants, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendants' misconduct.

10

WHEREFORE, Plaintiff seeks the following relief:

(a)    an order enjoining Defendants from engaging in further acts of discrimination against Plaintiff and other employees as a result of the exercise of their rights under the FMLA;

(b)    an order directing that Plaintiff be reinstated to his previous position as project manager at Defendant Gaylor Electric's Mooresville, North Carolina facility, or a comparable position thereto, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(c)    an order awarding Plaintiff back pay (including fringe benefits) from the date of the discriminatory acts alleged through the date of trial;

(d)    a jury trial on this claim;

(e)    an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

(f)    an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(g)    an order awarding Plaintiff such other and further relief as this Court deems fit.

## FOURTH CLAIM
## FOR WILLFUL VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT
### (Against All Defendants)

As a fourth, separate and distinct claim, Plaintiff complains of Defendants as follows:

86.    Plaintiff hereby incorporates by reference as though fully set forth herein each and every allegation of paragraph 1 through 57, inclusive of this Complaint.

87.    The acts described herein were engaged in with Defendants knowing or showing reckless disregard for whether their conduct violated the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

WHEREFORE, Plaintiff seeks the following relief:

(a)    an order enjoining Defendants from engaging in further acts of willful violation of the FMLA;

(b)    an order making Plaintiff whole by awarding liquidated damages pursuant to the FMLA in an amount deemed appropriate by the Court;

(c)    a jury trial on this claim;

11

(d)     an order awarding Plaintiff prejudgment interest and post-judgment interest in an amount and at a rate to be determined at the time of trial;

(e)     an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(f)     an order awarding Plaintiff such other and further relief as this Court deems fit.

### FIFTH CLAIM
### FOR VIOLATION OF THE RETALIATORY EMPLOYMENT DISCRIMINATION ACT
(Against All Defendants)

As a fifth, separate, distinct and independent claim, Plaintiff complains of Defendants, as follows:

88.     Plaintiff hereby incorporates, by reference, as though fully set forth herein each and every allegation of paragraphs 1 through 57, inclusive of this Complaint.

89.     At all times material herein, Defendant Gaylor Electric was a "person" as defined in REDA, N.C. Gen. Stat. § 95-240(1);

90.     At all times material herein, Defendant Baker was a "person" as defined in REDA, N.C. Gen. Stat. § 95-240(1);

91.     Defendants' proposed deductions from his salary were illegal under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6, § 95-25.7, § 95-25.8, and § 95-25.13.

92.     Plaintiff's actions in inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed, unauthorized and illegal deductions from his compensation, constituted protected activity under REDA, N.C. Gen. Stat. § 95-241(a)(1b).

93.     Defendants terminated Plaintiff because of his protected activity in inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed, unauthorized and illegal deductions from his compensation.

94.     Defendants' termination of Plaintiff was unlawful, and in retaliation for his protected activity under REDA, N.C. Gen. Stat. § 95-241(a)(1b).

95.     Defendants' termination of Plaintiff constituted a willful violation of REDA, N.C. Gen. Stat. § 95-243(c).

WHEREFORE, Plaintiff seeks the following relief:

(a)     a declaration that the practices and acts complained of herein are a violation of REDA;

12

(b)     an order enjoining Defendants from engaging in violations of REDA, by terminating his employment for motives that violate the statute;

(c)     an order directing that Plaintiff be reinstated to his previous position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

(d)     an order awarding Plaintiff back pay (including fringe benefits) from the date of the discriminatory acts through the date of trial;

(e)     an order awarding Plaintiff front pay (including fringe benefits) from the date of the trial forward;

(f)     an order awarding Plaintiff treble the amount of his lost wages and benefits, and other economic damages proximately caused by Defendant's unlawful conduct;

(g)     an order awarding Plaintiff compensatory damages;

(h)     a jury trial on this claim;

(i)     an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(j)     an order awarding Plaintiff all attorney's fees, expert witness fees, and costs of this action; and

(k)     for such other relief as may be just, proper, and necessary to afford complete relief to Plaintiff.

## SIXTH CLAIM
## FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (Against Defendant Gaylor Electric)

As a sixth, separate, distinct, and independent claim, Plaintiff complains of Defendant Gaylor Electric as follows:

96.     Plaintiff incorporates by reference, as though fully set forth, each and every allegation contained in paragraphs 1 – 57 inclusive, of this Complaint.

97.     North Carolina law recognizes the public-policy exception to the employment at-will doctrine.

98.     North Carolina law prohibits the termination of employment for unlawful reasons or purposes that contravene public policy.

13

99. North Carolina law provides that public policy is violated when an employee is fired in contravention of express policy declarations. Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.

100. Defendant Gaylor Electric's termination of Plaintiff's employment occurred for reasons that violate public policy.

101. Defendant Gaylor Electric's termination of Plaintiff's employment for inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed unauthorized and illegal deductions from his compensation, which would have violated the North Carolina Wage and Hour Act, contravenes the public policies set forth in the North Carolina Wage and Hour Act in that it is the public policy of the State of North Carolina to promote the general welfare of the people by enacting and enforcing laws concerned with wage levels of employees, hours of labor, and payment of earned wages.

102. Defendant Gaylor Electric's termination of Plaintiff's employment for inquiring, complaining, providing information, and/or initiating an inquiry regarding the proposed unauthorized and illegal deductions from his compensation, which would have violated the North Carolina Wage and Hour Act, also contravenes the public policies set forth in the Retaliatory Employment Discrimination Act in that it is the public policy of the State of North Carolina to promote the general welfare of the people by enacting and enforcing laws prohibiting discrimination against employees for exercising their rights under that statute.

103. As a direct and proximate result of the wrongful acts of Defendant Gaylor Electric, Plaintiff has suffered substantial losses in earnings and benefits, which he would have received except for Defendant's illegal conduct.

104. As a direct and proximate result of the wrongful acts of Defendant Gaylor Electric, Plaintiff sustained humiliation, anger, anxiety and grief, and is entitled to damages for Defendant's misconduct.

105. Because the conduct of Defendant Gaylor Electric constitutes gross, wanton, malicious, reckless, and/or intentional violation of his rights under the public policy of North Carolina, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff seeks the following relief:

(a) an order enjoining Defendant Gaylor Electric from engaging in further violations of North Carolina public policy as set forth in the North Carolina Wage and Hour Act and the Retaliatory Employment Discrimination Act;

(b) an order directing that Plaintiff be reinstated to his previous or an equivalent position with Defendant Gaylor Electric, with the salary and benefits to which he would have been entitled, absent his termination, or alternatively, an order making Plaintiff whole by awarding him front pay in an amount deemed appropriate by the Court;

14

(c)    an order awarding Plaintiff back pay (including fringe benefits) from the date of the illegal acts through the date of trial;

(d)    an order awarding Plaintiff front pay (including fringe benefits) from the date of the trial forward;

(e)    an order awarding Plaintiff compensatory damages for his humiliation, embarrassment, anger, anxiety, and grief;

(f)    an order awarding Plaintiff punitive damages;

(g)    a jury trial on this claim;

(h)    an order awarding Plaintiff pre-judgment and post-judgment interest in an amount determined at the time of trial;

(i)    an order awarding Plaintiff all attorney's fees, expert witness fees and costs of this action; and

(j)    an order awarding Plaintiff such other and further relief as this Court deems appropriate.

**PLAINTIFF REQUESTS A JURY TRIAL OF ALL ISSSUES TRIABLE HEREIN BY A JURY.**

This 18th day of September 2019.

LAW OFFICES OF GLEN C. SHULTS

By: _Glen C. Shults_
     GLEN C. SHULTS

Attorneys for Plaintiff
DARRELL JEFFREY FORTUNE

959 Merrimon Avenue, Suite 204 (28804)
Post Office Box 18687
Asheville, North Carolina 28814
Telephone: (828) 251-9676
Facsimile: (828) 251-0648
E-Mail: shultslaw@bellsouth.net
North Carolina State Bar No. 25641

15

Exhibit - A



**NCDOL**
N.C. Department of Labor

CHERIE K. BERRY
Commissioner of Labor

Harriet S. Hopkins
Administrator
Retaliatory Employment Discrimination Bureau

August 1, 2019

**BY CERTIFIED MAIL**
70171450000147818671

Darrell Fortune c/o Glen Shults
PO Box 18687
Asheville, NC 28814

Re: Darrell Fortune v. Gaylor Electric, Inc
File No: 46478

Dear Darrell Fortune:

The Bureau has received your request that the Bureau issue you a right-to-sue letter regarding the above-referenced Complaint. You request meets the requirements set forth in the Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §95-242(c).

**THIS IS YOUR 90-DAY RIGHT-TO-SUE LETTER.** Pursuant to N.C. Gen. Stat. §95-243, if you intend to pursue a lawsuit against the Respondent, you must file a civil action in superior court within ninety (90) days of the date of this letter. If you fail to file a civil action within this time, your right to sue the Respondent under the provisions of REDA is lost.

If you want to seek legal advice regarding the requirements for filing a civil action, you may want to consult with an attorney or the NC Lawyer Referral Service at the NC Bar Association at 1-800-662-7660 may be able to refer you to an attorney.

With the issuance of this 90-Day Right-to-Sue letter, your Complaint file is now closed and the Bureau will take no further action on your case. If you have questions, you may contact our Information Officer, Jay Cronley, as set out below. A copy of this letter has been sent to Respondent.

Sincerely,

Jay Cronley
Information Officer

cc: Respondent
*Complainant RTS Letter--Requested*



**NCDOL**
N.C. Department of Labor

CHERIE K. BERRY
Commissioner of Labor

Harriet S. Hopkins
Administrator
Retaliatory Employment Discrimination Bureau

August 1, 2019

**BY CERTIFIED MAIL**
70171450000147818671

Darrell Fortune
116 Ford Rd.
Morganton, NC 28655

Re: Darrell Fortune v. Justin Baker
File No: 46480

Dear Darrell Fortune:

The Bureau has received your request that the Bureau issue you a right-to-sue letter regarding the above-referenced Complaint. You request meets the requirements set forth in the Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §95-242(c).

**THIS IS YOUR 90-DAY RIGHT-TO-SUE LETTER.** Pursuant to N.C. Gen. Stat. §95-243, if you intend to pursue a lawsuit against the Respondent, you must file a civil action in superior court within ninety (90) days of the date of this letter. If you fail to file a civil action within this time, your right to sue the Respondent under the provisions of REDA is lost.

If you want to seek legal advice regarding the requirements for filing a civil action, you may want to consult with an attorney or the NC Lawyer Referral Service at the NC Bar Association at 1-800-662-7660 may be able to refer you to an attorney.

With the issuance of this 90-Day Right-to-Sue letter, your Complaint file is now closed and the Bureau will take no further action on your case. If you have questions, you may contact our Information Officer, Jay Cronley, as set out below. A copy of this letter has been sent to Respondent.

Sincerely,

Jay Cronley
Information Officer

cc: Respondent
*Complainant RTS Letter--Requested*

1101 Mail Service Center • Raleigh • NC • 27699-1101
Office: 919-707-7940 • Fax: 919-733-3886 • Jay.Cronley@labor.nc.gov

Case 1:19-cv-00346-MR-WCM Document 1 Filed 12/13/19 Page 37 of 37