IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 346

| | |
|---|---|
| DARRELL JEFFREY FORTUNE, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>GAYLOR ELECTRIC, INC., )<br>and JUSTIN BAKER, individually, )<br>)<br>Defendants. )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on Defendants' Partial Motion to Dismiss (Doc. 5), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff has responded (Doc. 10) and Defendants have replied (Doc. 11). Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

I. Factual Background

Plaintiff's Complaint alleges as follows:

On March 28, 2016, Plaintiff began working for Gaylor Electric, Inc. ("Gaylor Electric") as a project engineer at the company's offices in Mooresville, North Carolina. Pl.'s Compl. (Doc. 1-2) at ¶¶10, 13.

During Plaintiff's employment, Defendant Justin Baker ("Baker") was the Executive Vice-President for Gaylor Electric's Southeast Region. In that

position, Baker made decisions with respect to the hiring, termination, and compensation of employees. Id. at ¶¶ 17-18.

At all relevant times, Gaylor Electric maintained a "Paid Time Off" ("PTO") policy, which allowed Plaintiff seven (7) PTO days in 2017. Id. at ¶ 19.

As of Monday, September 25, 2017, Plaintiff had exhausted all of his PTO days for 2017. Id. at ¶ 20. That day, Plaintiff developed a severe toothache as the result of a broken crown and left work around 10:45am, with permission, to attend a dental appointment. Id. at ¶¶ 21–22. He was examined by Todd Kincer, DDS, who determined that his lower wisdom teeth were impacted and needed to be removed as soon as possible. Id. at ¶ 23. Plaintiff scheduled a consultation with oral surgeon Bryan Neuwirth, DDS for the following day. Id. at ¶24.

On Tuesday, September 26, 2017, Plaintiff worked until approximately 1:30PM, then left, with permission, for his appointment with Dr. Neuwirth. During that appointment, Dr. Neuwirth scheduled Plaintiff for oral surgery the following day (Wednesday, September 27, 2017). Id. at ¶¶ 25-26. Plaintiff advised Gaylor Electric that he would need to take time off on September 27 for the surgery. Id. at ¶ 27.

On Wednesday, September 27, 2017, Plaintiff underwent oral surgery for the removal of his impacted wisdom teeth. On the same date, Dr. Neuwirth "issued Plaintiff a memorandum" to the attention of his supervisor stating that

2

Plaintiff had undergone oral surgery and should be excused from work on September 27 and 28, 2017. Id. at ¶ 29. Plaintiff did not work on September 27, 2017. Id. at ¶ 31.

On Thursday, September 28, 2017, Plaintiff experienced significant pain from the surgery but reported to work briefly for a monthly meeting. Id. at ¶ 32. Plaintiff's Complaint appears to allege that Plaintiff provided Dr. Neuwirth's memorandum to his supervisor that day. Id. at ¶ 30. Baker gave Plaintiff permission to return home later that day. Id. at ¶ 33.

On Friday, September 29, 2017, Plaintiff continued to experience significant pain and was unable to report to work. He sent a text message to his immediate supervisor advising him of the situation and requesting permission to work away from the office. Plaintiff's supervisor called him in response and gave him permission to work away from the office on that date. Id. at ¶¶ 34-36. Plaintiff then worked away from the Gaylor Electric offices from approximately 7 AM until approximately 2:40 PM. Id. at ¶ 37.

Plaintiff was off from work over the weekend of September 30—October 1, 2017, though he continued to experience significant pain. Id. at ¶¶ 38-39.

On Monday, October 2, 2017, Plaintiff became sick in his vehicle during his commute to work and called Gaylor Electric's attendance line to inform them that he would not be attending work that day. Id. at ¶¶ 40-41.

On Tuesday, October 3, 2017, Plaintiff reported to work at his usual time

3

and worked the entire day. That morning, he received an email from a corporate administrative assistant, advising that he had been approved for PTO leave for September 27—29, even though he had previously exhausted his allotted PTO leave. Plaintiff then called a human resources representative at Gaylor Electric's headquarters who informed Plaintiff that a PTO request had been submitted for him. Plaintiff contacted Baker's assistant who advised Plaintiff that Baker had directed her to submit a PTO request form on Plaintiff's behalf. Id. at ¶¶ 44-46.

That same day, Plaintiff attended a meeting with his immediate supervisor, Baker, and Ron Cayton, the general superintendent for Gaylor Electric. At the meeting, Plaintiff was advised that the PTO request had been submitted for him because he did not work full days on September 27, 28, and 29. He was also told that he would be paid for 20 hours of work for the prior week. Plaintiff objected and stated that he was entitled to be paid for 32 hours as he had worked all or part of the day on September 25, 26, 28, and 29. The group was unable to come to an agreement on the number of hours for which Plaintiff should be paid. Id. at ¶¶ 47-50.

On Wednesday, October 4, 2017, Plaintiff sent an email to the human resources representative and the corporate administrative assistant with whom he had previously dealt stating that he was entitled to his full salary for the prior work week. By 11:30am, Plaintiff had not received a response and

4

therefore sent a second email reiterating the same information. Id. at ¶ 51.

Shortly thereafter, Baker and Westin Short, Gaylor Electric's vice-president of engineering, entered Plaintiff's office. Short and Baker informed Plaintiff that he would be paid for 40 hours of work for the prior work week, but that he was terminated immediately. Plaintiff requested a reason for his termination but did not receive one. Id. at ¶¶ 52-53.

## II. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### III. Discussion

Plaintiff's Complaint contains claims for: 1) violation of the Fair Labor Standards Act; 2) interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA"); 3) discrimination/retaliation against Plaintiff under the FMLA; and 4) willful violation of the FMLA. Through the instant Motion, Defendants seek the dismissal of the second, third, and fourth claims.

An employee who is eligible for benefits under the FMLA is entitled to take up to twelve (12) weeks of leave each year due to a "serious health condition that makes the employee unable to perform the functions" of his or her position. 29 U.S.C. § 2612(a)(1)(D); see Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 81, 122 S. Ct. 1155, 1156–57, 152 L. Ed. 2d 167 (2002). "[T]he FMLA does not entitle eligible employees to paid leave." Bosse v. Baltimore Cty., 692 F. Supp. 2d 574, 581 (D. Md. 2010)(citing Glunt v. GES Exposition Servs., Inc., 123 F.Supp.2d 847, 870 (D.Md.2000). However, "if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an

employee on unpaid FMLA leave." Downs v. Winchester Med. Ctr., 21 F. Supp. 3d 615, 617 (W.D. Va. 2014)(citing 29 C.F.R. § 825.220).

A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).[1] "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

The FMLA provides employees with prescriptive rights which "set[] substantive floors for conduct by employers, and creat[e] entitlements for employees." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006)(citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir.1998)). Specifically, "[c]laims of alleged violations of these prescriptive rights—known as 'interference' or 'entitlement' claims—arise under 29 U.S.C.A. § 2615(a)(1), which states that 'it shall be unlawful for any employer

---

[1] A significant portion of Plaintiff's Response relates to whether Plaintiff had a "serious medical condition" and whether adequate notice was provided as required by 29 C.F.R. § 825.303(a). Because Defendants do not dispute these issues, the undersigned has not addressed them.

to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" Yashenko, 446 F.3d at 546.

The FMLA also provides proscriptive rights arising under 29 U.S.C. § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Claims of alleged violations of these rights are known as "retaliation" or "discrimination" claims. Yashenko, 446 F.3d at 546.

### A. FMLA Interference Claim

To plead a claim for interference under the FMLA, a plaintiff must demonstrate that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citing Ragsdale, 535 U.S. at 89) (citing 29 U.S.C. § 2617(a)(1)).[2]

---

[2] This analysis has also been described in other ways. Cf. Reed v. Buckeye Fire Equip., 241 F. App'x 917, 924 (4th Cir. 2007) ("To state such a claim, the employee must prove that the employer: (1) interfered with his or her exercise of FMLA rights; and (2) caused prejudice thereby.")(citing Ragsdale, 535 U.S. at 89) with Dune v. G4s Regulated Sec. Sols., Inc., No. CA 0:13-1676-JFA-BM, 2014 WL 7920436, at *12 (D.S.C. Dec. 15, 2014), report and recommendation adopted, No. 0:13-CV-01676-JFA, 2015 WL 799523 (D.S.C. Feb. 25, 2015)("To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1)[s]he was an eligible employee, (2) [her] employer was covered by the Act, (3)[s]he was entitled to leave under the FMLA, (4)[s]he gave [her] employer adequate notice of [her] intention to take leave, and (5) the employer denied [her] FMLA benefits to which [s]he was

8

### 1. Element 1: Entitlement to FMLA Benefits

Defendants do not dispute that Plaintiff was entitled to FMLA benefits.

### 2. Element 2: Interference

"Actionable interference exists where the employer impedes, restrains, or denies the exercise of any rights protected the FMLA." Reed v. Buckeye Fire Equip., 241 F. App'x 917, 924 (4th Cir. 2007)(citing 29 C.F.R. § 825.220(a)). "An employer's conduct may constitute interference with an employee's FMLA rights if it would have a chilling effect and would discourage employees from exercising their FMLA rights." Snipes v. Sw. Virginia Reg'l Jail Auth., 350 F. Supp. 3d 489, 493 (W.D. Va. 2018)(citing Gordon v. United States Capitol Police, 778 F.3d 158, 164–66 (D.C. Cir. 2015)).

Here, Defendants argue that they did not interfere with the provision of Plaintiff's FMLA benefits because Plaintiff was permitted to take leave as he requested between September 25 and October 2, 2017.

In his Complaint, Plaintiff alleges that Defendants interfered with the provision of his FMLA benefits by: 1) failing to provide Plaintiff with adequate notice of his FMLA rights and responsibilities after receiving notice of his need to take time off; 2) failing to provide Plaintiff with the leave to which he was

---

entitled.")(alterations in original)(citing Carr v. Mike Reichenbach Ford Lincoln, Inc., No. 11–2240, 2013 WL 1282105 at *6 (D.S.C. Mar.26, 2013)).

entitled; and, 3) failing to restore him to his previous position and by terminating his employment.

The Complaint does not contain factual support for an argument that Defendants failed to provide Plaintiff with notice of his FMLA rights. Plaintiff does not allege that Defendant failed to notify him of his FMLA rights and responsibilities when he submitted the subject leave requests, or at any previous time. Similarly, the Complaint does not support a claim that Defendants impeded, restrained, or denied the exercise of Plaintiff's right to take leave; Plaintiff was permitted to take all of the leave that he requested and there is no plausible indication that Defendants imposed new conditions or requirements on Plaintiff that would discourage Plaintiff or other employees from making FMLA requests in the future.

With regard to Plaintiff's position in the company following his leave, Plaintiff is correct that he was entitled "to be restored… [t]o the position of employment held… [w]hen the leave commenced," or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." Ainsworth v. Loudon Cty. Sch. Bd., 851 F. Supp. 2d 963, 975 (E.D. Va. 2012)(internal citations omitted). However, the Complaint does not contain any factual allegations that indicate Plaintiff was not restored to his prior position following his leave. To the contrary, Plaintiff's allegations indicate that he remained in his current position throughout his period of leave

10

and up until his employment was terminated.

With respect to the termination of Plaintiff's employment, one of the regulations interpreting the FMLA, 29 C.F.R. § 825.220(c), states as follows:

> The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. See § 825.215.

29 C.F.R. § 825.220(c)

Some authorities have construed this provision as authorizing an FMLA interference claim based on adverse employment action, including the termination of a plaintiff's employment. See e.g., Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124–25 (9th Cir. 2001)("As noted, the particular provision of the regulations prohibiting the use of FMLA-protected leave as a negative factor in employment decisions, 29 C.F.R. 825.220(c), refers to 'discrimination,' but actually pertains to the 'interference with the exercise of rights' section of the statute, § 2615(a)(1), not the anti-retaliation or anti-discrimination sections, §§ 2615(a)(2) and (b).").

Controlling authority from the Fourth Circuit on this issue has not been

located. See Edusei v. Adventist Healthcare, Inc., No. CIV.A. DKC 13-0157, 2014 WL 3345051, at *6 (D. Md. July 7, 2014)("[T]he Fourth Circuit has never expressly held that termination can be brought as an interference claim."). However, some lower courts within the Fourth Circuit appear to have taken a similar position. See Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 871 (D. Md. 2000)("where an adverse employment action is influenced by the taking of family leave, the employer interferes with that employee's exercise of their rights under the FMLA") and Conner v. Nucor Corp., No. 2:14-CV-4145, 2015 WL 5785510, at *15 (D.S.C. Sept. 30, 2015)("There is authority for allowing a retaliation claim to proceed under either prong of the statute.").

Others disagree. For example, in Downs v. Winchester Med. Ctr., the district court found that "a number of courts have interpreted violations of § 825.220(c) as retaliation claims" and that the Fourth Circuit clearly "views 'the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions' as set forth in § 825.220(c) as FMLA retaliation, not interference." Downs, 21 F. Supp. 3d 615, 618-19 (W.D. Va. 2014). The Downs court went on to conclude that because the plaintiff in that matter had failed to allege that she was actually denied any FMLA benefits, she had failed to allege any prejudice related to FMLA interference. Consequently, while she had stated a claim for FMLA retaliation, she had failed to state an interference claim. Downs, 21 F. Supp. 3d at 619.

12

The undersigned finds Downs and similar authorities to be persuasive on this point. See Downs, 21 F. Supp. 3d 615, 618–19 (W.D. Va. 2014)(citing Bullock v. Kraft Foods, Inc., No. 3:11CV36–HEH, 2011 WL 5872898 (E.D.Va. Nov. 22, 2011) aff'd, 501 Fed.Appx. 299 (4th Cir.2012)); and Rountree v. City of Portsmouth, No. 2:11CV106, 2011 WL 5101761 (E.D.Va. Oct. 26, 2011) aff'd, 487 Fed.Appx. 785 (4th Cir.2012))(noting that "numerous district courts within the Fourth Circuit have interpreted violations of § 825.220(c) as retaliation claims"); Battle v. City of Alexandria, No. 1:14CV1714 JCC/MSN, 2015 WL 1650246, at *5 (E.D. Va. Apr. 14, 2015)(stating that an employee's remedy for a violation under § 825.220(c) "lies as a retaliation claim and not as an interference claim"); Snipes, 350 F. Supp. 3d at 494 ("[e]mployees who are terminated after taking FMLA leave and being reinstated to the same position from which they left do not satisfy the ["interference"] element of a claim for interference. They have not been denied their FMLA rights and have received all of the benefits to which they are entitled."); see also Capps v. Mondelez Glob., LLC, 847 F.3d 144, 156 (3d Cir. 2017)(finding that the plaintiff's termination, after he returned to the same position and same benefits, did not amount to a deprivation of FMLA benefits and was therefore not interference under the FMLA).

In this case, as the factual allegations in Plaintiff's Complaint do not indicate that Plaintiff was denied any FMLA leave but rather that Plaintiff

13

was provided all of the leave he requested and was terminated within a relatively short period after that leave was completed, the second element of an interference claim has not been satisfied.

### 3. Element 3: Causation

"The FMLA provides no relief unless the employee has been prejudiced by the violation." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 302 (4th Cir. 2016)(citing Ragsdale, 535 U.S. at 89, 122 S.Ct. 1155)). Harm as a result of interference with FMLA rights may come in the form of lost compensation or benefits, the denial or employment, reinstatement, or promotion. Bosse, 692 F. Supp. 2d at 585 (citing Ragsdale, 535 U.S. at 89, 122 S.Ct. 1155; Reed, 241 Fed.Appx. at 924).

Here, Plaintiff's interference claim does not satisfy this element. As discussed above, the allegations in Plaintiff's Complaint do not indicate that Defendants interfered with his FMLA rights. Because there has been no interference, there can be no resulting harm and, practically, there was none in this case; Plaintiff was apparently paid his full salary for the week at issue.

Plaintiff also argues that, had he been aware of his FMLA rights, he would have requested any necessary medical certification from Dr. Kincer and Dr. Neuwirth. However, Plaintiff received a memorandum from Dr. Neuwirth that described his inability to return to work for two (2) days, and Plaintiff provided that document to his supervisor when Plaintiff returned to work.

14

In sum, Plaintiff's FMLA interference claim is subject to dismissal.

### B. FMLA Retaliation Claim

To make out a prima facie case for retaliation under the FMLA, "a plaintiff must show that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016)(citing Yashenko, 446 F.3d at 546); Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)).

#### 1. Element 1: Protected activity

Defendants argue that Plaintiff has not demonstrated that Defendants knew he intended to take FMLA-qualifying leave and therefore Plaintiff did not engage in protected activity.

Plaintiff counters that he engaged in protected activity because he provided Defendants with adequate notice of his intent to take leave "that was FMLA-qualifying." Pl.'s Resp. (Doc. 10) at 18.

The undersigned agrees with Plaintiff on this point. Plaintiff communicated his need for leave on account of his dental issue to Defendants numerous times between September 25 and October 2, 2017. Plaintiff also provided the company with the memorandum from Dr. Neuwirth directing that Plaintiff should be excused from work on September 27 and 28. Though Plaintiff did not expressly mention the FMLA when he notified Defendants

15

that he would be taking leave, he was not required "to invoke the FMLA in order to benefit from its protections." Dotson, 558 F.3d at 295; see Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007)("In providing notice, the employee need not use any magic words. The critical question is how the information conveyed to the employer is reasonably interpreted.").

Once Plaintiff provided notice regarding his need to take leave for his medical treatment and recovery, the responsibility fell on Defendants to inquire further about whether Plaintiff was seeking leave that could be covered under FMLA. Brushwood v. Wachovia Bank, N.A., 520 F. App'x 154, 157 (4th Cir. 2013)("Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, the employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.")(citing Rhoads v. FDIC, 257 F.3d 373, 383 (4th Cir.2001)).

### 2. Element 2: Adverse employment action

"Courts confronted with FMLA retaliation claims have imported the definition of 'adverse employment action' used in the Title VII context[,] … termination being the quintessential example[.]" Ainsworth, 851 F. Supp. 2d at 976 (internal citations omitted). It is undisputed that Plaintiff experienced an adverse employment action. See Yashenko, 446 F.3d at 551 (termination is an adverse employment action).

### 3. Element 3: Causal link

The remaining inquiry is whether Plaintiff has adequately demonstrated a causal connection between his taking of FMLA leave and his termination.

Plaintiff's allegations, which involve circumstantial and not direct evidence, provide some support for his contention that a link existed between his leave and his termination, including that he was terminated shortly after returning from his absence, and that he was not provided a reason for his termination. Pl.'s Compl. (Doc. 1-2) at ¶¶ 52-53. Plaintiff's also suggest that the termination of his employment was related instead to a dispute with Defendants regarding his pay.

"While evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." See Adams, 789 F.3d at 427 (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989)); accord Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017) ("[F]or purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.").

Considering this standard, the undersigned finds that Plaintiff's allegations, at this stage of the proceedings, satisfy the causation element.

### C. Willful Violation of FMLA

"A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." Settle v. S.W. Rodgers Co., 182 F.3d 909, 912 (4th Cir. 1999). To prevail on such a claim, an employee must show more than mere negligence. See Anusie-Howard v. Todd, 920 F. Supp. 2d 623, 628–29 (D. Md. 2013), aff'd, 615 F. App'x 119 (4th Cir. 2015)(citing Settle, 182 F.3d at 912). For example, a "mere improper calculation of leave," Avent v. Kraft Foods Glob., Inc., No. 3:11-CV-37, 2012 WL 3555378, at *5 (E.D. Va. Aug. 16, 2012), or a "purported maladministration of [internal] policies," Bullock, 2011 U.S. Dist. LEXIS 134481, at *21, 2011 WL 5872898 (E.D.Va. Nov. 22, 2011) will not support a finding of willfulness. Further, a "willful" violation is not generally found where the employer granted the employee's request for leave. See Honeycutt v. Baltimore Cty., Md., No. CIV JFM-060958, 2007 WL 1858691, at *3 (D. Md. June 18, 2007), aff'd sub nom. Honeycutt v. Baltimore Cty., Maryland, 278 F. App'x 292 (4th Cir. 2008)(citing cases).

However, "a number of courts have presumed willfulness in retaliation cases." Moore v. Washington Hosp. Ctr., No. CIV.A. DKC 11-3742, 2012 WL 2915165, at *4 (D. Md. July 16, 2012)(citing cases).

Here, as discussed above, it is plausible that Defendants terminated Plaintiff in retaliation for taking leave. Therefore, on the current record, Plaintiff has also sufficiently alleged a willful violation of the FMLA.

## IV. Recommendation

For the reasons stated, the undersigned **RECOMMENDS:**

1. That Defendant's Motion to Dismiss (Doc. 5) be **GRANTED** as to Plaintiff's FMLA interference claim (Count Two) and that said claim be **DISMISSED WITH PREJUDICE**; and

2. That the Motion be **DENIED** as to Plaintiff's FMLA retaliation and willful violation claims (Counts Three and Four).

Signed: May 28, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).